Vandyke Johnson
619 West 143rd Street
Apt 54
New York, N.Y. 10031
Teknoman24@gmail.com

# 17CV 6184

UNITED STATES DISTRICT COURT
FOR THE
SOUTHERN DISTRICT OF NEW YORK

_____

VANDYKE JOHNSON,                              )
                                             )
              Plaintiff              )
                                             )
                                             )          **COMPLAINT**
           -vs-                       )
                                             )
NEW YORK UNIVERSITY;                          )
TRUSTEES OF NEW YORK UNIVERSITY;              )
ANDREW D. HAMILTON, in his official           )
And individual capacity                       )
CYNTHIA PEREZ, in her official and            )          **JURY TRIAL
individual capacity; and                      )          DEMANDED**
TERESA GARGIULO,                              )
in her official and individual capacity;      )
                                             )
           Defendant(s).              )
_____)

    Plaintiff proceeding *Pro – Se* VANDYKE JOHNSON (hereinafter referred to as

"Plaintiff"), respectfully alleges as follows"

## PRELIMINARY STATEMENT

1.      This is an action for damages, and seeking injunctive and declaratory relief

against Defendant(s) New York University, the Trustees of New York University,

Cynthia Perez, Director of Admissions, and Teresa Gargiulo, Director of Advising and

Academic Support Services for their acts and omissions with regard to the Plaintiff in

violation of both federal and state law, which have greatly damaged and destroyed the

1

Plaintiff's college experience, reputation, emotional well-being and future career prospects. This case is about discrimination, bias, and repeated retaliation by private university Defendant New York University due to the actions, omissions, errors, and flawed and fraudulently procedures, and/or negligence and overall failure to provide Plaintiff, truthful fact finder concerning false allegations that continually penalize and retaliate against the Plaintiff based on false allegations by the Defendants. Intentional Discrimination by a private university was declared illegal under _Runyon v. McCrary_, 427 U.S. 160 (1976) and no state action is required pursuant to 42 U.S.C. § 1981 and the 2nd Circuit's ruling in _Phillip v. University of Rochester_, 316 F. 3d 291 (2003), see also _John Doe v. Columbia University_, 2016 WL 4056034. The Defendants have a long storied history on discrimination and retaliation against people of color and giving white students a slap on their wrist for crimes being committed on and off campus.

2.          The Plaintiff was a former student attending New York University in good academic standing.  Plaintiff was entering the 2006-2007 school years with the intent of finishing school with a degree until the Defendants had the Plaintiff arrested on false charges of Grand Larceny on August 23, 2006. Plaintiff was declared Persona Non Grata by the Defendants on the same day as the false arrest. May 9, 2007 the Plaintiff was acquitted on the charges and proceeded to sue the Defendants for false arrest and other causes of action on June 10, 2008 case no. 1:08-cv-05277-SHS-RLE. The District Court dismissed the federal claims against the Defendants but did not claim jurisdiction on the state law claims against the Defendants.

3.          Plaintiff did not pursue his state law claims against the Defendants in State Court. Defendants have admitted in the past that they agree with the Plaintiff's past lawsuit on

falsely arresting the Plaintiff. More than 10 years past when the Plaintiff sent an email to the Defendants (**Exhibit A**) that the Defendant wished to return back to school to finish his studies on February 27, 2017. Plaintiff asked the Defendants for a meeting with the Deans and Office of Legal Counsel for entry back into the school. On March 9, 2017, Defendants state they do not have the academic file of the Plaintiff anymore "because it's been more than 7 years since you were here". On June 28, 2017, Defendants denied the Plaintiff entry back into the school without explanation. Defendants knew that the Plaintiff was falsely accused; knew that the Judicial Hearing against the Plaintiff was biased against him and discriminatory when compared with white students accused of violating school policy; and retaliatory by denying Plaintiff entry back into school and a contractual relationship with the school.

## THE PARTIES

4.      Plaintiff Vandyke Johnson is an African American U.S. citizen residing in the State of New York. Plaintiff is 22 credits away from completing his Associates Degree and 2 years away from his Bachelors' Degree.

5.      Defendant New York University (NYU) is an elite private Ivy League University located in lower Manhattan, New York. Upon information and belief as of 2015, NYU receives nearly $344 million in federal funding and research as well as State and City grants.

6.      Upon information and belief, New York University operates under Chapter 176 of the laws of 1831 of the State of New York, which changed the name to New York University. Over governance of the University lies in the hands of more than twenty-five-member Board of Trustees. The Board of Trustees is entrusted to select the President,

oversee all faculty and senior administrative appointments, monitor the budget, supervise the endowment, and protect University property.

7.      Defendant Andrew K. Hamilton ("President Hamilton") is NYU's President.

8.      Defendant Cynthia Perez is Director of Admissions at NYU's School of Professional Studies.

9.      Defendant Teresa Gargiulo is Direction of Advising and Academic Support Services, at NYU's Paul McGhee Division.

## JURISDICTION AND VENUE

10.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1332. The parties are diverse and the amount in controversy well exceeds the statutory limit, exclusive of interest and costs.

11.      Venue is proper pursuant to 28 U.S.C. § 1391 because all Defendants reside in this district and a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## FACTUAL ALLEGATIONS TO ALL CAUSES OF ACTION

### *Plaintiff's Experience at New York University*

12.      Plaintiff was accepted to New York University as a transfer from CUNY Borough of Manhattan Community College ("BMCC"). At the time of being transferred, Plaintiff was interested in a wide arrange of programs at NYU and was ready to contribute to the community of one of the most prestigious universities. Plaintiff believed NYU was a place to be to foster his critical thinking and being able to become a leader after graduation from NYU. Plaintiff believed his experience at NYU would nurture and strengthen him for life.

4

13.        Plaintiff's few years at NYU, before the events mentioned in the complaint, Plaintiff was involved in student life and making progress academically. Plaintiff was at the library frequently studying and preparing for class while getting his GPA up. Plaintiff was well known positively on campus and had many friends within NYU.

### Plaintiff's Arrest at NYU

14.        Plaintiff was falsely accused of larceny by Rory Deegan, a NYU Public Safety.

15.        On August 23, 2006, Plaintiff was falsely arrested by NYPD after members of NYU Public Safety and NYU Faculty, falsely accused the Plaintiff of Grand Larceny in the 4th Degree; Members of NYU Public Safety and NYU Faculty was involved in fabricating evidence and suppressing eyewitnesses on the day of the events. To this day, the Defendants do no deny this.

16.        In response to the false allegations against the Plaintiff, the Defendants declared the Plaintiff *persona non grata* on the same day the Plaintiff was arrested, August 23, 2006.

17.        Plaintiff's criminal case went to trial on May 7, 2007 and the Plaintiff was acquitted of all charges on May 9, 2007.

### NYU Disciplinary Hearing and Fabricated Evidence

18.        Plaintiff informed Defendants, specifically Thomas Grace of the acquittal and presented documents to the Defendants showing the fabrication and manipulation of witnesses.

19.        Defendants at first pretended to be surprised at the documents presented by the Plaintiff and Mr. Grace tried to make a deal, that would return the Plaintiff to school but

not allowed in the gyms. Plaintiff wanted a compromise on the issue of using all facilities but the Defendants refused to budge.

20.     Mr. Grace and the Plaintiff met several times over the few weeks between May through June 2007. Plaintiff was not informed that he could give a written statement. Plaintiff did inform Mr. Grace that he would not attend the hearing, fearing that the Defendants would not hold a fair hearing

21.     Defendants found the Plaintiff guilty based on preponderance of evidence at the school hearing, despite fabricating evidence at the hearing, withholding documentation, ignoring court documents and finding a different conclusion.

### *Plaintiff's Lawsuit under § 1983 against Defendants*

22.     Plaintiff filed a lawsuit against the City of New York as well as NYU Defendants.

23.     The District Court granted NYU Defendants Motion to Dismiss but did not dismiss the State Law Claims against the NYU Defendants.

24.     Plaintiff did not pursue State Law Claims against NYU Defendants.

### *Plaintiff seeking reinstatement into NYU*

25.     Plaintiff sent an email on March 2017, seeking reinstatement and to finish his education.

26.     On the email, Plaintiff asks to speak with the Dean in person and also with the Office of General Counsel within NYU to resolve any differences between the Plaintiff and the Defendants.

27.     Defendants informed the Plaintiff that he needs to reapply, despite admitting in the past that the Defendants falsely accused the Plaintiff of a crime.

28.     Defendants informed the Plaintiff that they "lost" the school record of the Plaintiff and need to retrieve the records again.

29.     Defendants "losing" or even erasing the school record of the Plaintiff is against *FERPA*.

30.     Plaintiff provided some of the documents that NYU lost but was unable to obtain the rest of the documents.

31.     Defendants give no reason why the Plaintiff was denied entry back into NYU on or around June 2017.

32.     Plaintiff now commences a new lawsuit against the Defendants.

### NYU Defendants brief history of Discrimination and Retaliation

33.     Plaintiff gives documented examples of discrimination shown by the NYU Defendants versus the preference shown for whites and/non people of color:

a) September 16, 2016, a Mr. Koya Abe, of Japanese descent, files a $16 million dollar lawsuit against the NYU Defendants, alleging discrimination and retaliation;

b) December 1, 2016, it was reported that a Mr. Shem Semei Garret, African American, files a discrimination and retaliation against the NYU Defendants;

c) On August 17, 2011, it was reported that the NYU Defendants paid $210,000 to settle a racial discrimination suit, reported by Julie Cannold, CNN;

d) On November 21, 2016, it was reported by Ladan Jaballas that a Dr. OraLee Branch filed a discrimination and retaliation suit against the NYU Defendants; the author even goes on to label the segment: "Who's suing NYU"

34.     Plaintiff now gives example(s) of preferential treatment of whites by the NYU

Defendants:

    a) Branden Olsen, a white male, accused of raping Ashley Sweeney, reported by the

        editorial board of the Wall Street Journal stated that: "Sweeney attempted suicide

        twice in the aftermath of the assault before filing charges with the local police in

        February 2014". The story goes on that "In spite of the severity of Olsen's crime,

        NYU is permitting him to return to campus for the spring 2015 semester". " His

        punishments were a mere suspension for the remainder of the Spring and Fall

        2014 semesters and an idle ban from university housing";

    b) Christian Gutierrez, a white male, 18 years old, plead guilty and was sentenced to

        45 days jail time for killing albatross, that is federal protected, and is allowed to

        return to NYU after completion of his sentence; **(see Exhibit B**)

    c) Last and not least, Wolfgang Ballinger, a white male and a former Cornell

        student, was allowed to enroll at NYU as a student, even after being charged with

        sexual abuse, and pleading guilty to the charge above and sentenced by the state

        of New York to six (6) years of probation of forcible touching and also have a 3

        year order of protection against him'.

        ***NYU Defendants' Inability to Follow their Own Policy***

35.     Had the Plaintiff been in any situation described above, and a white male, the

Plaintiff would have been able to continue his education despite the crimes committed by

the 3 males above. But for the NYU Defendants, the Plaintiff is a Black male, who was

tried and found not guilty in a court of law, and the NYU Defendants decided to have

their own "Kangaroo Court" while excluding witnesses, and fabricate evidence to fit the narrative of the University and not the truth.

36.     With that being the case, the NYU Defendants is doing all they can to make sure that the Plaintiff, a black male, is not reinstated into the University to continue his education; and to make sure his is made an example of while his white male counter parts are able to fully to complete their education because of their background and despite pleading guilty to crime(s). The message being sent by the NYU Defendants, is that if you're black or non-white, on behalf of NYU, the NYU Defendants will being false charges and will make sure that the person of color life is ruined despite not being found guilty of any crime; however on the flip side of the coin, if you're a white male and possibly come from an affluent family, NYU Defendants will turn a blind eye to the crimes committed and if there's any punishment, the most will be one (1) school year at a minimum. Henceforth, the Plaintiff commences this lawsuit against the NYU Defendants.

37.     NYU Defendants policy in their "Non-Discrimination and Anti-Harassment Policy and Complaint Procedures for Students" is specified under Section I paragraph 2 under Policy definitions as relevant in part:

   a) **Prohibited discrimination** is adverse treatment of any student based on race, gender and/or gender identity or expression, color, religion, age, national origin, ethnicity, disability, veteran or military status, sexual orientation, marital status, or citizenship status, rather than on the basis of his/her individual merit. Prohibited discrimination also includes any conduct that constitutes illegal discrimination under the law of the jurisdiction in which the conduct occurs.

9

38.     Unfortunately the NYU Defendants don't follow their own Anti-Discrimination policy.

39.     Under the same policy, Section VI of the Defendants Anti-Discrimination states:

   a)  NYU will take all reasonable steps to protect the complainant and any witnesses from retaliation for reporting discrimination or harassment or for participating in the investigation of a complaint. Any member of the University Community who retaliates against an individual who complains of discrimination or harassment or witnesses' discrimination or harassment, or participates in the investigation of a discrimination or harassment complaint violates this policy and may be subject to sanctions. Complaints of retaliations should be reported as violations of this policy.

40.     Again, it is unfortunate that the NYU Defendants don't follow their own policy.

## FIRST CAUSE OF ACTION
### (Violation of § 1981 and Title VI of the Civil Rights Act of 1964)

41.     Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 to 40 as if fully set forth at length herein.

42.     42 U.S.C. § 1981 provides, in relevant part, that:

**(c) Protection against Impairment:**

The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State Law.

43.     The Supreme Court in _Runyon v. McCrary_, 427 U.S. 160 (1976) held: "that Section 1 of the Civil Rights Act of 1866, from which § 1981 is derived, prohibits racial discrimination in the making and enforcing of private contracts".

44.        The Supreme Court also ruled in *CBOCS West, Inc., v. Humphries*, 553 U.S. 442

(2008), the Court held that retaliation is covered under 42 U.S.C. § 1981 which provides

that "[a]ll persons within the jurisdiction of the united States shall have the same right in

every State and Territory to make and enforce contracts… as is enjoyed by white

citizens".

45.        Title VI, 42 U.S.C. § 2000d et seq., was enacted a part of the landmark Civil

Right Act of 1964. It prohibits discrimination on the basis of race, color, and national

origins in programs and activities receiving federal financial assistance. NYU receives

nearly $344 million in federal funding and research as well as State and City grants. Title

VI creates a private right of action for intentional discrimination.

46.        NYU Defendants, in violation of Section 1981 and Title VI, has intentional

discriminated against the Plaintiff Vandyke Johnson on the basis of race by condoning a

hostile educational environment due to knowingly permitting NYU Officials to engage in

a prolonged intentional discrimination based on race.

47.        NYU Defendants treat black male students different from white male students

while enrolled at New York University as demonstrated above. NYU Defendants

continue to use fabricated evidence and target the Plaintiff based on his color and gender.

48.        Plaintiff has suffered from faculty-on-student intentional discrimination based on

misconduct from the NYU Defendants by endorsing a message that white students

enjoyed a chance, while being convicted of a crime, of obtaining an education at New

York University as oppose to a black male student, acquitted of crimes based on false

allegations by the NYU Defendants, do not enjoy the same and/or equal benefits.

49.     These acts of intentional discrimination and retaliation committed by the NYU

Defendants were intentional, willful, malicious, and oppressive and were motivated in

party, by a desire of revenge against the Plaintiff, who the NYU Defendants disagreed

with a Court verdict and discrimination.

50.     As a result of Defendants' conduct, the Plaintiff is entitled to compensatory and

punitive damages.

### SECOND CAUSE OF ACTION
### (Violation of New York Executive Law Section 296(4)

51.     Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 to 50 as if

set forth at length herein.

52.     New York Executive Law, Article 15, Human Rights Law, section 296(4)

provides in pertinent part:

It shall be an unlawful discriminatory practice for an education corporation or

association…to permit the harassment of any student or applicant, by reason of his race,

color, religion, disability, national origin, sexual orientation, military status, sex, age, or

marital status[.]

53.     NYU, in violation of New York Executive Law, Article 15, Human Rights Law,

section 296(4), has intentionally discriminated against the Plaintiff on the basis of his

color and male sex in a prolonged intentional based discrimination. NYU defendants was

deliberated indifference to an apparent approval of said intentional discrimination and

misconduct, with the consequence that the Plaintiff has been effectively denied equal

access to NYU's resources and opportunities, thereby undermining and detracting from

the Plaintiff's educational experience.

54.    As a result of the foregoing, Paul is entitled to injunctive relief to prevent

threatened future acts of intentional discrimination and retaliation that subject the

Plaintiff to a hostile education environment in violation of New York Executive Law,

Article 15 of Human Rights Law section 296(4).

55.    As a result of the foregoing, the Plaintiff is entitled to compensatory and punitive

damages for past and present acts of intentional discrimination and retaliation.

### THIRD CAUSE OF ACTION
### (Violation of New York Civil Rights Law Section 40-c)

56.    Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 to 55 as if

set forth at length herein.

57.    New York Civil Rights Law section 40-c states:

    i.    All persons within the jurisdiction of this state shall be entitled to the equal protection of the laws of this state or any subdivision thereof.

    ii.    No person shall, because of race, creed, color, national origin, sex, marital status, sexual orientation or disability, as such term is defined in section two hundred ninety-two of the executive law, be subjected to any discrimination in his or her civil rights, or to any harassment, as defined in section 240.25 of the penal law, in the exercise thereof, by any other person or by any firm, corporation or institution, or by the state or any agency or subdivision of the state.

58.    NYU Defendants, in violation of New York Civil rights Law section 40-c, have

intentionally discriminated and retaliated against the Plaintiff on the basis of his color and

sex by condoning a hostile education environment due to knowingly permitting NYU

Administration, specifically Andrew Hamilton, Cynthia Perez, and Teresa Gargiulo, to

prolonged intentional discrimination and misconduct as to the Plaintiff based on what

NYU Defendants had acknowledge previously, was false accusations against the

Plaintiff.  NYU Defendants was deliberate indifference to an apparent approval of said

13

intentional discrimination, retaliation and misconduct, with the consequence that the Plaintiff has been effectively denied equal access to NYU's resources and opportunities, thereby undermining and detracting from the Plaintiff's educational experience.

59.     As a result of the foregoing, Plaintiff is entitled to compensatory and injunctive relief to prevent threatened future acts of intentional discrimination and retaliation based misconduct that subject the Plaintiff to a hostile educational environment in violation of New York Civil rights Law section 40-c.

60.     As a result of the foregoing, Plaintiff is entitled to damages for past acts of intentional discrimination and retaliation.

### FOURTH CAUSE OF ACTION
### <u>(Breach of Contract)</u>

61.     Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 to 60 as if set forth at length herein.

62.     Based on the aforementioned facts and circumstances, New York University breached express and/or implied agreement(s) with the Plaintiff.

63.     NYU committed several breaches of its agreements with Plaintiff, including, without limitation, to provide a learning environment free of intentional discrimination and retaliation and to maintain the confidentiality and privacy of parties involved.

64.     As a direct and foreseeable consequence of these breaches, Plaintiff sustained damages, including, without limitation, emotional distress, loss of educational opportunities, economic injuries and other direct and consequential damages.

65.     Plaintiff is entitled to recover damages for NYU Defendant's breach of the express and/or implied contractual obligations described above.

66.     As a result of the foregoing, Plaintiff is entitled to damages determined at trial.

## FIFTH CASE OF ACTION
### (Covenant of Good Faith and Fair Dealing)

67.     Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 to 66 as if

set forth at length herein.

68.     Based on the aforementioned facts and circumstances, NYU Defendants breached

and violated covenant of good faith and fair dealing implied in the agreement(s) with

Plaintiff by intentionally discriminating and retaliation against Plaintiff on the basis of his

color and male sex by condoning a hostile educational environment due to knowingly

permitting NYU Administration Andrew Hamilton, Cynthia Perez, and Teresa Gargiulo

to engage in prolonged intentional discrimination and retaliation based misconduct as to

Plaintiff based on what NYU had determined after investigation were untrue allegations

and permitting intentional discrimination and retaliation based misconduct in the school's

programs or activities with actual knowledge of, a deliberate indifference to and an

apparent approval of said intentional discrimination and retaliation based misconduct,

with the consequence that Plaintiff has been effectively denied equal access to NYU's

resources and opportunities, thereby undermining and detracting from Plaintiff's

educational experience.

69.     As a direct and foreseeable consequence of these breaches, Plaintiff sustained

damages, including, without limitation, emotional distress, psychological damages, loss

of educational opportunities, economic injuries and other direct and consequential

damages.

70.     Plaintiff is entitled to recover damages for NYU's breach of the express and/or

implied contractual obligations described above.

## SIXTH CAUSE OF ACTION
### (Unfair or Deceptive Trade Practices)

71.     Plaintiff repeats and re-alleges each every allegation, paragraph 1 to 70

hereinabove as if fully set forth herein.

72.     Section 349(a) of New York General Business Law provides consumer protection

by declaring an unlawful "deceptive acts and practices in the conduct of any business,

trade, or commerce or in the furnishing of any service in this state."

73.     NYU's Student Policies and Procedures on Discrimination and Retaliation state,

among other things:

> Effective Date:         September 25, 2013
>
> Supersedes:            Version December 2006
>
> **Prohibited discrimination** is adverse treatment of any student based on race,
> gender and/or gender identity or expression, color, religion, age, national origin,
> ethnicity, disability, veteran or military status, sexual orientation, marital status,
> or citizenship status, rather than on the basis of his/her individual merit.
> Prohibited discrimination also includes any conduct that constitutes illegal
> discrimination under the law of the jurisdiction in which the conduct occurs.
>
> **II. <u>COMMITMENT TO EQUAL TREATMENT AND OPPORTUNITY</u>**
> NYU is committed to equal treatment and opportunity for its students and to
> maintaining an environment that is free of bias, prejudice, discrimination, and
> harassment. Prohibited discrimination and prohibited harassment undermine the
> character and purpose of NYU and may violate the law. They will not be
> tolerated.
>
> **VI. <u>RETALIATION</u>**
> NYU will take all reasonable steps to protect the complainant and any witnesses
> from retaliation for reporting discrimination or harassment or for participating in
> the investigation of a complaint. Any member of the University Community who
> retaliates against an individual who complains of discrimination or harassment or
> witnesses discrimination or harassment, or participates in the investigation of a
> discrimination or harassment complaint violates this policy and may be subject to
> sanctions. Complaints of retaliation should be reported as violations of this policy.

74.     NYU has engaged in the following acts or practices that are deceptive or

misleading in a material way, or committed deceptive acts or practices, which were

aimed at the consumer public at large that were a representation or omission likely to mislead a reasonable consumer acting reasonably under the circumstances:

    a.  By causing Plaintiff to believe that NYU would follow its policies, copies of which were provided to NYU and are also available on NYU's Internet website; and

    b.  By causing Plaintiff to believe that if he paid tuition and fees to NYU, that NYU would uphold its obligations, covenants and warranties to the Plaintiff described in its policies.

75.      NYU had no intention of following its own policies and procedures for the Plaintiff when intentionally discrimination and retaliating against the Plaintiff on the basis of color and his male sex by condoning a hostile educational environment due to knowingly permitting NYU Administration, specifically Andrew Hamilton, Cynthia Perez, and Teresa Gargiulo to engage in prolonged intentional discrimination and retaliation based misconduct as to Plaintiff based on what NYU had determined after investigation untrue and falsified allegations and permitting that intentional discrimination and retaliation based misconduct in the school's programs or activities with actual knowledge of, a deliberate indifference to and an apparent approval of said intentional discrimination and retaliation based misconduct, with the consequence that Plaintiff has been effectively denied equal access to NYU's resources and opportunities, thereby undermining and detracting from the Plaintiff's educational experience.

76.      NYU's stated policies and procedures, together with its violations thereof only with respect to Plaintiff as the black male falsely accused of larceny demonstrates NYU's deceptive practices with respect to black males falsely accused of larceny at NYU as oppose to white males being convicted of sexual assault and other crimes.

77.     Based on the foregoing facts and circumstances, NYU engaged in unfair or deceptive practices in violation of Section 349(a) of the General Business Law.

78.     As a result of NYU's deceptive acts and practices, Plaintiff sustained damages, including, without limitation, emotional distress, psychological damages, loss of educational opportunities, economic injuries and other direct and consequential damages.

79.     As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined.

## SEVENTH CAUSE OF ACTION
### (Intentional Infliction of Emotional Distress)

80.     Plaintiff repeats and re-alleges each and every allegation from paragraphs 1 to 79 hereinabove as if fully set forth herein.

81.     Based on the foregoing facts and circumstances, NYU intentionally discriminated and retaliated against the Plaintiff on the basis of color and male sex by condoning a hostile educational environment due to knowingly permitting NYU Administration, specifically Andrew Hamilton, Cynthia Perez, and Teresa Gargiulo, to engage in prolonged intentional discrimination and retaliation based misconduct as to Plaintiff based on what NYU had determined after investigation were untrue and fabricated allegations and permitting intentional discrimination and retaliation based misconduct in the school's programs or activities with actual knowledge of, a deliberate indifference to and an apparent approval of said intentional discrimination based misconduct, with the consequence that Plaintiff has been effectively denied equal access to NYU's resources and opportunities, thereby undermining and detracting from Plaintiff's educational experience.

82.     The above actions and inactions by NYU were so outrageous and utterly intolerable that they caused mental anguish and severe psychological and emotional distress to the Plaintiff, as well as physical harm, financial loss, humiliation, loss of reputations and other damages.

83.     As a direct and proximate result of the above conduct, Plaintiff sustained substantial damages, including, without limitation, emotional distress, loss of education opportunities, economic injuries and other direst and consequential damages.

84.     As a result of the foregoing, Plaintiff is entitled to compensatory and punitive damages.

## JURY TRIAL DEMANDED

WHEREFORE, Plaintiff demands judgment against the NYU Defendants as follows:

a.     For compensatory damages in an amount of ten (10) million dollars in damages;

b.     For punitive damages against the individual NYU Defendants in the amount of ten (10) million dollars in damages;

c.     For such other and further relief as this Court may deem just and proper.

d.     Plaintiff is seeking Twenty (20) Million Dollars in Damages total.

### I declare under the penalty of perjury that the foregoing is true and correct

State of New York
County of New York

Sworn to and before me

This 15th day of August 2017

NOTARY PUBLIC
JUNISE JAIME
Notary Public, State of New York
Reg. No. 04JA6325007
Qualified in New York County
Commission Expires May 18, 2019

VANDYKE JOHNSON
619 West 143rd Street
Apt 54
New York, N.Y. 10031

19

# EXHIBIT



# FW: Returning to school

**Teresa Gargiulo** <teresa.gargiulo@nyu.edu>

Wed 3/8/2017 4:16 PM

To: escobar603@hotmail.com <escobar603@hotmail.com>;

Dear Vandyke,

We have reviewed your file and determined that you are welcomed to re-apply to the program.

The application along with additional information is available on our website at the following link:
http://scps.nyu.edu/admissions/undergraduate/mcghee/apply/admissions-criteria/readmission-to-mcghee.html

Please let me know if you have any questions.

Teresa Gargiulo

**Teresa Gargiulo**
NYU School of Professional Studies
McGhee Division
7E 12th Street, 6th Floor
New York, NY 10003
212.998.7167 – phone
teresa.gargiulo@nyu.edu

---------- Forwarded message ----------
From: **Vandyke Johnson** <escobar603@hotmail.com>
Date: Mon, Feb 27, 2017 at 12:48 PM
Subject: Returning to school
To: "cda266@nyu.edu" <cda266@nyu.edu>

*Exhibit A*

Good afternoon,

My name is Vandyke Johnson and I was a student at New York University until August 2006. The background that lead to my expulsion was due to an arrest made by the 6th Precinct, due to the false accusations of a former Public Safety Officer. I was found not guilty at the criminal trial and did not attend the NYU trial even though transcripts of the trial was made available for NYU. I do regret not going to the NYU trial because of the inconsistencies and false information presented to the committee that lead to the expulsion. Nevertheless, I wish to continue my studies and to graduate. I wish also to have a personal face to face meeting with the deans and Nancy Kilson, to resolve any differences that we may have so I'll be able to graduate and move on.

# RE: Returning to school

**Teresa Gargiulo** <teresa.gargiulo@nyu.edu>

Thu 3/9/2017 1:11 PM

To:'Vandyke Johnson' <escobar603@hotmail.com>;

We do not have the academic file anymore because it's been more than 7 years since you were here.
We will need for you to resubmit previous college records or high school/GED transcripts.

Thank you.

**Teresa Gargiulo**
NYU School of Professional Studies
McGhee Division
7E 12th Street, 6th Floor
New York, NY 10003
212.998.7167 – phone
teresa.gargiulo@nyu.edu

**From:** Vandyke Johnson [mailto:escobar603@hotmail.com]
**Sent:** Thursday, March 09, 2017 1:01 PM
**To:** Teresa Gargiulo
**Subject:** Re: Returning to school

Thank you for your response. I am now submitting the application and look forward in completing the program.
Also, on the application, the information that NYU is asking for, it was already submitted (such as academics and transcripts from other colleges).

**From:** Teresa Gargiulo <teresa.gargiulo@nyu.edu>
**Sent:** Wednesday, March 8, 2017 4:16 PM
**To:** escobar603@hotmail.com
**Subject:** FW: Returning to school



*Exhibit A*

Dear Vandyke,
We have reviewed your file and determined that you are welcomed to re-apply to the program.
The application along with additional information is available on our website at the following link:
http://scps.nyu.edu/admissions/undergraduate/mcghee/apply/admissions-criteria/readmission-to-mcghee.html

## Readmission to McGhee - New York University

scps.nyu.edu

The NYU School of Professional Studies Office of Admissions welcomes your interest in returning to the
NYU School of Professional Studies Paul McGhee Division to …

Please let me know if you have any questions.

Teresa Gargiulo

**Teresa Gargiulo**
NYU School of Professional Studies
McGhee Division
7E 12th Street, 6th Floor
New York, NY 10003
212.998.7167 – phone
teresa.gargiulo@nyu.edu


---------- Forwarded message ----------
From: **Vandyke Johnson** <escobar603@hotmail.com>
Date: Mon, Feb 27, 2017 at 12:48 PM
Subject: Returning to school
To: "cda266@nyu.edu" <cda266@nyu.edu>

Good afternoon,

My name is Vandyke Johnson and I was a student at New York University until August 2006. The background that lead to my expulsion was due to an arrest made by the 6th Precinct, due to the false accusations of a former Public Safety Officer. I was found not guilty at the criminal trial and did not attend the NYU trial even though transcripts of the trial was made available for NYU. I do regret not going to the NYU trial because of the inconsistencies and false information presented to the committee that lead to the expulsion. Nevertheless, I wish to continue my studies and to graduate. I wish also to have a personal face to face meeting with the deans and Nancy Kilson, to resolve any differences that we may have so I'll be able to graduate and move on.

# NYU School of Professional Studies Decision

NYUSPS Office of Admissions <mcgheeadmissions@nyu.edu>

Thu 6/29/2017 9:10 AM

To: Vandyke Johnson <escobar603@hotmail.com>;



**NYU** | SCHOOL OF
PROFESSIONAL STUDIES

McGhee Division for
Undergraduate Studies
Office of Admissions
7 East 12th Street, Suite 921
New York, NY 10003

P: 212 998 7100
F: 212 995 4674

sps.nyu.edu/mcghee.admissions
mcgheeadmissions@nyu.edu

06/28/2017

Vandyke Johnson
520 West 158th Street  Apt 6D
New York, New York 10032
United States

Dear Vandyke,

Thank you for applying to the New York University's School of Professional Studies (NYUSPS). The Admissions committee has carefully reviewed your application for admission to the NYUSPS McGhee Division for Undergraduate Studies for Fall 2017. Unfortunately, we will not be able to offer you admission. We assure you this was a difficult decision, and we appreciate your application.

Due to the volume of applications we receive each semester, we do not disclose or discuss specific reasons for denial.  Please note that all admissions decisions are final and we are unable to consider appeals.  Denied applicants who wish to reapply must wait one full academic year before they can reapply to any of our programs.

Thank you again for your interest in the NYU School of Professional Studies.  Please accept our best wishes for success as you continue to pursue your academic endeavors.

Sincerely,

*Cynthia Pérez*

Cynthia Pérez
*Director of Admissions*



Exhibit A

NYU School of Professional Studies
Office of Admissions
Phone: (212) 998-7100
Email: mcgheeadmissions@nyu.edu
Mail/In Person: 7 East 12th Street, Suite 921 NY, NY 10003

**NYU** | SCHOOL OF
PROFESSIONAL STUDIES

Mail - osdober806@hotmail.com

To opt-out from future email communications, please <u>Unsubscribe.</u>

NYU School of Professional Studies
Office of Admissions
<u>7 East 12th Street, Suite 921</u>
<u>New York, NY 10003</u>

# EXHIBIT





Exhibit B

Jourdan Enriquez

<u>WSN Editorial Board</u>, Editorial Board
December 4, 2014

*Trigger warning: rape, sexual assault, suicide, self-harm, PTSD*

WSN reported today that Brandon Olsen, then a freshman at the Polytechnic Institute of NYU, raped fellow freshman Ashley Sweeney off-campus in September 2013. Sweeney attempted suicide twice in the aftermath of the assault before filing charges with local police in February 2014. NYU found Olsen guilty of non-consensual sexual intercourse, in violation of NYU's Sexual Misconduct Policy in March 2014. In spite of the severity of Olsen's crime, NYU is permitting him to return to campus for the Spring 2015 semester, provided he receives counseling to "address whatever issues may have contributed to, or precipitated, his behavioral choices, complete community service and not communicate with Sweeney." His punishments were a mere suspension for the remainder of the Spring and Fall 2014 semesters and an idle ban from university housing.

By trivially penalizing Olsen for a crime of this magnitude, NYU demonstrates its inability to seriously address sexual assault. The university's shameful adjudication is an insult to Sweeney and the trauma she and other survivors of rape have endured. This case demonstrates that NYU is complicit in the disturbing nationwide **trend** of treating rape as a minor offense rather than a full-fledged felony. If NYU intends to address rape with the severity it deserves, the university must adopt a zero-tolerance policy for future cases.

It is clear that the NYU administration is only nominally interested in prosecuting sexual violence, one that believes there are shades of grey when it comes to rape. The current attitude is discouragingly pervasive and undeniably toxic. Rapists should receive the harshest university response possible and be prosecuted to the fullest extent of the law. Thomas Grace, NYU director of the Office of Community Standards, said the process for determining how to punish perpetrators depends on the exact circumstances of the incident. There is no set policy for how the university should deal with rape cases going forward.

The university examined cases "roughly akin" to Sweeney's within the past three years, and "found that suspension and expulsion were equally common outcomes." The difference between the outcomes was attributed to the "unique circumstances of each incident." This case-by-case method is an excellent standard when considering evidence in disciplinary hearings, but it has no place in determining punishment once guilt has been found. Rape is rape. The recent changes to NYU's sexual assault policy required by Title IX has positively redefined consent, yet they have not significantly altered punishments, which is needed for heinous crimes such as rape.

The lack of transparency in the university's handling of sexual misconduct cases is extremely troubling. NYU's failure to provide statistics on hearings regarding sexual misconduct is inexcusable and indicates its refusal to take full accountability for its response to such cases.

NYU should not have given Olsen a petty suspension and housing banishment — he should have been expelled. If NYU is unable or unwilling to sufficiently determine an appropriate punishment, this type of case should be ceded to the police. This punishment should not apply solely to Olsen, but to all rapists enrolled in college. Approaching rape with a dismissive and forgiving attitude indicates a tolerance for a crime that threatens campus health and public safety. Acceptance of sexual assault to any degree is an affront to decency and justice.



Courtesy of Lindsay Young

The Laysan albatross, a federally protected species, with its chick at the Kaena Point Natural Area Reserve in Hawaii.

Jemima McEvoy, Managing Editor
July 7, 2017

Tisch junior Christian Gutierrez was sentenced to 45 days in jail for his involvement in a case that left over 15 albatrosses slaughtered in a Hawaii nature reserve in December 2015.

In addition to his immediate detention, Gutierrez was sentenced to 200 hours of community service and will pay $1,000 in restitution for damages to the nature reserve that reportedly totaled over $200,000. In sentencing, the court also rejected the defense's request for a deferral of Gutierrez's no contest plea, which would have permitted the defendant to seek an expungement of his record.

Although Gutierrez will be released from custody in time for the start of fall semester, his defense attorney, Myles Breiner, refused to answer whether Gutierrez plans to return to NYU in the new academic year.

In response to the ruling, a petition demanding the expulsion of Gutierrez has gathered almost 2,000 signatures in less than 24 hours. According to the coordinator, Timothy Pham, a letter attached to the petition will be delivered to key decision-makers at NYU, including President Andrew Hamilton, Chief of Staff to the President Rich Baum and Senior Vice President of Student Affairs Marc Wais.



Exhibit B

**The Cornell Daily Sun** | (http://cornellsun.com/2017/04/11/former-cornell-fraternity-president-sentenced-to-probation-for-sex-offense/)





Wolfgang Ballinger '17, a former student and fraternity president at Cornell, was sentenced on Tuesday after pleading guilty to a sex offense.

BALLINGER                                                                 April 11, 2017

# Sex Offense in Cornell Fraternity Leads to Probation for Chapter's Ex-president

By **Nicholas Bogel-Burroughs**

*This post has been updated.*

About 14 months after he was arrested and charged with first-degree attempted rape, Wolfgang Ballinger '17, the former Cornell fraternity president whose arrest made international headlines, was sentenced Tuesday to six years of probation after pleading guilty to a misdemeanor sex offense (http://cornellsun.com/2017/02/07/former-cornell-fraternity-president-pleads-guilty-to-misdemeanor-after-alleged-sexual-assault-in-fraternity-bedroom/) .

After the victim read a scathing, graphic statement in court, Tompkins County Judge Joseph Cassidy imposed the maximum sentence possible under a plea deal reached between Ballinger and the prosecutor's office.

The former School of Hotel Administration student and Psi Upsilon president pleaded guilty to forcible touching in February (http://cornellsun.com/2017/02/07/former-cornell-fraternity-president-pleads-guilty-to-misdemeanor-after-alleged-sexual-assault-in-fraternity-bedroom/) as part of a plea deal that prosecutors said was reached in consultation with the victim.

"This was a decision that our office took very seriously and with great care, and most importantly with many consultations with [the victim] and her family," Assistant District Attorney Eliza Filipowski said.

"A victim does not always need to subject herself to that type of scrutiny," Filipowski said of a trial in which the victim would have to testify, adding that, without the plea deal, the victim would have "nightmares of that scrutiny for years to come."

The victim, a Cornell student whose name The Sun is withholding, said in court that Ballinger had continued to touch her as she repeatedly said "no."

"I just wanted it to stop," she said. "Even a president of a top fraternity is not allowed to violate whoever they please without permission."

In addition to the six years of probation, Ballinger is also barred from coming in contact with the victim until 2020 and will have to pay $1,000 to the court in fines and $250 in surcharges. He will not have to register as a sex offender.

The sex offense occurred in the Psi Upsilon fraternity at 2 Forest Park Ln. on Jan. 31, 2016, when Ballinger was 21.

In February 2016, Ballinger was arrested and charged with first-degree attempted rape, first-degree criminal sex act and sexual misconduct, all felonies. He was indicted four months later on one felony charge (http://cornellsun.com/2016/07/14/ballinger-17-indicted-for-first-degree-sexual-abuse/) , first-degree sexual abuse.

The reduction in charges "speaks volumes" about the case, Ballinger's lawyer said in court on Tuesday as she requested a punishment of community service for the former Cornell student.

"My client would like to see good come out of this rather than just his name being forever associated with rape," the attorney, Sarah Wesley, said, asking the judge to assign her client between 500 and 1,000 hours of community service.

Judge Cassidy rejected that argument and instead imposed the maximum sentence allowed by the plea deal.

"The victim here makes allegations of horrendous criminal conduct by the defendant," Cassidy said. "The facts or the details … in this case are not going to be heard by a jury.

Cassidy said it is understandable that a victim or prosecutor would not want to take the case to trial, which would be open to the public.

"That's the nature of our system," he said.

The victim said Ballinger had introduced himself to her that night using a fake name and proceeded to sexually and psychologically abuse her.

"He would open the door and pretend to let me out and then shut it again," she said.

The victim's attorney, Cari Simon, told (https://www.washingtonpost.com/news/grade-point/wp/2017/04/11/former-cornell-fraternity-president-gets-probation-in-sex-offense-case/) The Washington Post that the victim is a Cornell student.

"He did much more than hurt some stranger he met on the street," the victim said in court. "What he did will forever stay with my mom, who could not get off of the couch when she learned what he did to me."

"All I want is to feel like myself again."

Asked by Cassidy if he wished to address the court, Ballinger said, "No thank you, sir."

The former fraternity president was "kicked out of Cornell" after the offense, his attorney said in court, adding that he has been taking courses offered by Hunter College and New York University since the assault and receiving high marks.

While on probation, Ballinger must avoid coming into contact with children — an exception was made for relatives — and is prohibited from entering establishments where alcohol is sold "for on-premise consumption."

Judge Cassidy granted an exemption to the latter requirement, allowing Ballinger to continue working as a bartender at Webster Hall, a famed nightclub and concert venue in New York City run by Ballinger's father.

District Attorney Matthew Van Houten told reporters outside of the courtroom that "the victim and her family feel very good that probation was imposed."

"I'm disappointed that Mr. Ballinger hasn't expressed remorse or made a statement of responsibility at any point, aside from his guilty plea," he said. "That, to me, speaks to the fact that he needs some level of supervision, that someone needs to be looking over his shoulder and make sure he learned his lesson from this."

Cornell declined to comment on the sentence, referring to a statement issued in March, when Ballinger pleaded guilty (http://cornellsun.com/2017/02/07/former-cornell-fraternity-president-pleads-guilty-to-misdemeanor-after-alleged-sexual-assault-in-fraternity-bedroom/).

"We respect the decision of the Tompkins County District Attorney's Office to resolve this case," John Carberry, director of media relations, said in March.

Ballinger sued the University last May (http://cornellsun.com/2016/05/13/ballinger-17-files-suit-claiming-university-assault-investigations-are-flawed/), alleging that Cornell's process for investigating sexual assault claims violates state law.

Tompkins County Supreme Court Judge Eugene Faughnan denied Ballinger's petition in September but said he could renew the complaint when Cornell completes its investigation into the assault.

Speaking in court, the victim said Ballinger "placed a target on me and my life would be changed forever."

"He ignored my pleas begging him to stop, but none of it mattered," she said. "I didn't understand that he genuinely wanted to assault me."