```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                             :
VANDYKE JOHNSON,                                             :     OPINION AND ORDER
                                                             :
                        Plaintiff,                           :     17 Civ. 6184 (VEC) (GWG)
                                                             :
        -v.-                                                 :
                                                             :
NEW YORK UNIVERSITY,                                         :
et al.,                                                      :
                                                             :
                        Defendants.                          :
-------------------------------------------------------------X
```

GABRIEL W. GORENSTEIN, United States Magistrate Judge

Plaintiff Vandyke Johnson brings this action against New York University ("NYU"), the President of NYU Andrew Hamilton, the Trustees of NYU ("Trustees"), the Director of Admissions at NYU's School of Professional Studies ("SPS") Cynthia Perez, and the SPS Director of Student Affairs Teresa Gargiulo. The Clerk of the Court has entered defaults against Hamilton, the Trustees, Perez, and Gargiulo (collectively, the "Moving Defendants"). The Moving Defendants now seek to vacate the entries of default.[1] For the reasons set forth below,

---

[1] Notice of Motion, filed Feb. 13, 2018 (Docket # 23) ("Defs. Not."); Memorandum of Law Supporting Defendants' Motion to Vacate Entry of Default, filed Feb. 13, 2018 (Docket # 24) ("Defs. Mem."); Declaration of William H. Miller, filed Feb. 13, 2018 (Docket # 25) ("Miller Decl."); Affidavit of Craig Jolley, filed Feb. 13, 2018 (Docket # 26) ("Jolley Aff."); Affidavit of Ankita Chaudhary, filed Feb. 13, 2018 (Docket # 27) ("Chaudhary Aff."); Plaintiff's Response to Defendants' Motion to Dismiss and the Defendants['] Motion to Vacate the Default Judgement, filed Feb. 26, 2018 (Docket # 29); Plaintiff's Memorandum of Law in Response to Defendants' Motion to Vacate Entry of Default Judgement and Motion to Dismiss Amended Complaint, filed Feb. 26, 2018 (Docket # 30) ("Pl. Mem."); Reply Memorandum of Law in Further Support of Defendants' Motion to Vacate Entry of Default, filed Mar. 6, 2018 (Docket # 32) ("Defs. Reply"); Affidavit of Dennis Di Lorenzo, filed Mar. 6, 2018 (Docket # 33) ("Di Lorenzo Aff."); Affidavit of Cynthia Perez, filed Mar. 8, 2018 (Docket # 35).

the Moving Defendants' motion is granted.[2]

I. BACKGROUND

    A. Facts Alleged in the Complaint

On August 23, 2006, while Johnson was a student at NYU, he was arrested on purportedly false charges of grand larceny. See Complaint, filed Aug. 15, 2017 (Docket # 2) ("Compl."), ¶ 2. These charges stemmed from an allegation that on that same date, Johnson searched the contents of an NYU Public Safety Officer's wallet, which had been left in a locker at an NYU sports facility. See Decision of New York University Judicial Board, dated July 5, 2007 (annexed as Ex. A to Jolley Aff.) ("Disciplinary Decision"), at I. NYU contends that a search of Johnson's locker at that facility revealed tools commonly used to commit burglary. See id.

Although Johnson states he was acquitted of the grand larceny charges on May 9, 2007, see Compl. ¶ 2, NYU held a disciplinary hearing on June 28, 2007, to determine whether Johnson should be punished for the underlying conduct, see Disciplinary Decision at II. On July 5, 2007, a disciplinary panel presiding over that hearing — on which none of the Moving Defendants sat — found that Johnson's actions were in violation of NYU's policies, and accordingly dismissed Johnson from NYU, declared him persona non grata in all NYU buildings and facilities, prohibited him from applying for readmission until the Fall 2009 term at the earliest, and noted that the decision to readmit Johnson would be at the sole discretion of the Dean of SPS. See Disciplinary Decision at II.A, IV, V.

---

[2] "A motion to set aside an entry of default is subject to disposition by a magistrate judge under 28 U.S.C. § 636(b)(1)(A)." Sea Hope Navigation Inc. v. Novel Commodities SA, 978 F. Supp. 2d 333, 335 n.1 (S.D.N.Y. 2013); accord J&J Sports Prod., Inc. v. Martinez, 2013 WL 2147790, at *1 n.2 (M.D.N.C. May 16, 2013) (citing cases).

On June 10, 2008, Johnson filed a federal lawsuit in the Southern District of New York against various defendants, including NYU and several of its employees, alleging in part that he was discriminated against on account of his race and asserting causes of action under 42 U.S.C. §§ 1981, 1983, 1985-88, and state law. See Compl. ¶ 2; Johnson v. City of New York, 669 F. Supp. 2d 444, 447-49 (S.D.N.Y. 2009). None of the Moving Defendants were parties to that lawsuit. See id. at 447. In that action, Johnson asserted, among other things, that the NYU defendants denied him "Due Process of Law" during the disciplinary process, and conspired with other defendants to have Johnson "wrongfully arrested, prosecuted, and dismissed as a student." Id. at 448-49 (internal quotation marks omitted). On November 12, 2009, the court dismissed all of Johnson's federal claims against the NYU defendants. See id. at 447. Eventually, the remaining federal claims against the other defendants were dismissed, and the court refused to exercise supplemental jurisdiction over Johnson's state law claims. See Johnson v. City of New York, 2010 WL 2292209 (S.D.N.Y. June 7, 2010); Judgment, Johnson v. City of New York, No. 08-5277 (SHS) (S.D.N.Y. June 14, 2010) (Docket # 58).

Johnson's current lawsuit follows from his attempt to reapply to NYU in February 2017. Compl. ¶¶ 3, 25. By email from Perez dated June 28, 2017, NYU denied Johnson admission. See id. ¶¶ 3, 31; Email from Cynthia Perez to Vandyke Johnson, dated June 28, 2017 (annexed as part of Ex. A to Compl. at *25-26[3]). Accordingly, on August 15, 2017, Johnson commenced this action, asserting causes of action against all defendants under 42 U.S.C. §§ 1981 and 2000d et seq., New York Executive Law § 296(4) ("NYHRL"), and New York Civil Rights Law § 40-c ("NYCRL"), as well as asserting claims of breach of contract, breach of the covenant of good

---

[3] Page numbers indicated as "*__" refer to the numbers created by the ECF system.

3

faith and fair dealing, unfair or deceptive trade practices in violation of New York General Business Law § 349(a), and intentional infliction of emotional distress. See Compl ¶¶ 41-84. As part of these allegations, Johnson asserts that the defendants discriminated against him on the basis of race both in its handling of the allegations against Johnson in 2006 and 2007, as well as in refusing to readmit him in 2017. See id. ¶¶ 12-40.

B. Procedural History and Service

The instant motion relates to Johnson's attempts to serve the Moving Defendants. On December 5, 2017, Hamilton, Perez, and the Trustees each received by mail a summons, complaint, and a form, issued pursuant to Fed. R. Civ. P. 4(e)(1) and N.Y. C.P.L.R. 312-a, by which they could acknowledge receipt of the summons and complaint by mail (the "Acknowledgment Form"). See Defs. Mem. at 4; see also Statements of Service by Mail and Acknowledgment of Receipt by Mail of Summons and Complaint, dated Nov. 7, 2017 (annexed as Ex. 1 to Miller Decl.) ("Acknowledgment Forms"); Chaudhary Aff. ¶ 2. The Acknowledgment Form stated that "if a defendant or defendant's agent returns the acknowledgment form within 30 days of receipt, the defendant will have 60 days from the date the defendant or defendant's agent mails or delivers to the U.S. Marshals Service the completed Acknowledgment . . . to file and serve an answer or other responsive pleading." Acknowledgment Forms at *5, *7, *9, *11, *13. This statement accords with a Standing Order in the Southern District of New York addressed to N.Y. C.P.L.R. 312-a stating that

> any defendant who returns a completed, dated, and signed Acknowledgment of Receipt of Service by Mail ("Acknowledgment Form") within thirty days of receiving the form from the Marshals Service will have sixty days from the date the defendant or defendant's agent mails or delivers the completed Acknowledgment Form to the Marshals Service to file and serve an answer or motion in response to the complaint.

Standing Order Extending Time to Answer After United States Marshals Service Effects Service

4

on a Defendant by Mail Under N.Y. C.P.L.R. § 312-a, 13 Misc. 0438 (S.D.N.Y. Dec. 30, 2013) ("Standing Order") (emphasis in original). By contrast, a defendant who is served personally and has not waived service has only 21 days after being served with a summons and complaint to respond. Fed. R. Civ. P. 12(a)(1)(A)(I).

Notwithstanding their receipts of the summons, complaint, and Acknowledgment Form by mail, a U.S. Marshal personally served Hamilton, Perez, and the Trustees on December 19, 2017. See Chaudhary Aff. ¶ 3. Gargiulo, who had not previously received the summons, complaint, and Acknowledgment Form by mail, was also personally served on that date. See id. ¶¶ 2-3. The proofs of service appearing on the ECF docket reflect personal service on these defendants on December 19, 2017. See Process Receipt and Return for Gargiulo, filed Jan. 11, 2018 (Docket # 8); Process Receipt and Return for Perez, filed Jan. 11, 2018 (Docket # 9); Process Receipt and Return for Hamilton, filed Jan. 11, 2018 (Docket # 10); Process Receipt and Return for Trustees, filed Jan. 11, 2018 (Docket # 11). Thus, Federal Rule of Civil Procedure 12(a)(1)(A)(I) would dictate that these defendants had to respond within 21 days, or by January 9, 2018.

When the U.S. Marshal personally served some of the defendants on December 19, 2017, Ankita Chaudhary, the Administrator of Legal Operations at the NYU Office of General Counsel ("OGC"), asked the U.S. Marshal why service was being made personally given that service had already occurred by mail. Chaudhary Aff. ¶¶ 1, 4. The U.S. Marshal responded that the U.S. Marshals Service had kept no record of when the mailings were sent, and thus was performing personal service as a precaution. Id. ¶ 5. Chaudhary later called the U.S. Marshal to ask whether the Acknowledgment Forms received by mail could still be completed and returned. Id. ¶ 6. The U.S. Marshal replied affirmatively, and stated that returning and completing these forms

5

would allow the defendants who did so to respond within the deadlines stated in those forms. Id. ¶ 7. Accordingly, on December 20, 2017, Chaudhary signed and dated the Acknowledgment Forms received by Hamilton and Perez, and returned them to the U.S. Marshals Service by overnight mail. Id. ¶ 8; see also UPS Shipment Receipt, dated Dec. 20, 2017 (annexed as Ex. A to Chaudhary Aff.). On December 27, 2017, William H. Miller, Associate General Counsel with NYU OGC, mailed a completed Acknowledgment Form to the U.S. Marshals Service on behalf of the Trustees. See Miller Decl. ¶¶ 1, 5.

On January 3, 2018, the U.S. Marshal spoke with Chaudhary by phone and asked if the OGC would accept and return an Acknowledgment Form on behalf of NYU by email. Chaudhary Decl. ¶ 9. Chaudhary responded in the affirmative. Id. On January 11, 2018, Miller added Gargiulo's name to this Acknowledgment Form and returned it to the U.S. Marshals Service. See Miller Decl. ¶ 6. The ECF docket reflects that NYU returned a completed Acknowledgment Form on January 11, 2018, and thus had until March 12, 2018, to respond. See Process Receipt and Return for NYU, filed Jan. 17, 2018 (Docket # 18) ("NYU Returned Acknowledgment Form").

No response to Johnson's complaint was filed by January 9, 2018. On January 25, 2018, Johnson asked the Clerk of Court to enter a "default judgment" against all defendants. See Request to the Clerk of the Court for Entry of Default Judgment, filed Jan. 25, 2018 (Docket # 12). The same day, the Clerk of Court issued certificates of default as to Gargiulo, Perez, Hamilton, and the Trustees. See Clerk's Certificates of Default, filed Jan. 25, 2018 (Docket ## 14-17).

Two business days later, on January 29, 2018, Miller filed a notice of appearance on behalf of all defendants and filed a letter indicating that he intended to file a motion to vacate the

6

certificates of default. See Notice of Appearance, filed Jan. 29, 2018 (Docket # 19); Letter from William H. Miller, filed Jan. 29, 2018 (Docket # 20) ("Miller Letter"), at 2. His letter asked whether these certificates could be vacated based on information provided in his letter or through a conference call. See Miller Letter at 2. Johnson opposed this request by letter, and stated that he was preparing a motion for default judgment. See Letter from Vandyke Johnson, filed Jan. 29, 2018 (Docket # 21). By Order dated January 30, 2018, this Court stated that it would not vacate the certificates of default based on the information provided in Miller's letter, but granted defendants leave to file a motion to vacate the Clerk's certificates of default. See Order, filed Jan. 30, 2018 (Docket # 22), at 1. With respect to Johnson's letter, the Court construed his statement that he was planning a motion for default judgment as a request for permission to make such motion. Id. The Court denied this request pending resolution of the Moving Defendants' motion to vacate. Id. On February 13, 2018, the Moving Defendants filed the instant motion.

II. APPLICABLE LAW

Under Fed. R. Civ. P. 55, where a defendant fails to "plead or otherwise defend" a case, the Clerk of the Court must enter the defendant's default. Fed. R. Civ. P. 55(a).[4] "The court may set aside an entry of default for good cause . . . ." Fed. R. Civ. P. 55(c). "Good cause" is assessed by considering three factors: "(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 96 (2d Cir. 1993); accord Sea Hope

---

[4] After the Clerk enters a default, a plaintiff may thereafter seek a default judgment. See Fed. R. Civ. P. 55(b)(2). Johnson requests "that the Court treats the Defendants['] Motion to Vacate Under Rule 55(c) as a Motion to Vacate Default Judgment under Rule 60(b)." Pl. Mem. at 10-11. This request is denied because no default judgment has been entered in this case.

7

Navigation Inc., 978 F. Supp. 2d at 337; Todtman, Nachamie, Spizz & Johns, P.C. v. Ashraf, 241 F.R.D. 451, 453 (S.D.N.Y. 2007), aff'd, 316 F. App'x 51 (2d Cir. 2009) (summary order). The court may also consider "whether the entry of default would bring about a harsh or unfair result." Enron Oil Corp., 10 F.3d at 96. "'[G]ood cause' . . . should be construed generously." Id. ("[B]ecause defaults are generally disfavored and are reserved for rare occasions, when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party."). This is in keeping with the Second Circuit's "strong preference for resolving disputes on the merits," New York v. Green, 420 F.3d 99, 104 (2d Cir. 2005) (internal quotation marks omitted) (quoting Powerserve Int'l, Inc. v. Lavi, 239 F.3d 508, 514 (2d Cir. 2001)), rather than based on a default.

"The determination of whether to set aside a default is left to the 'sound discretion of the judge, the person most familiar with the circumstances of the given case and . . . in the best position to evaluate the good faith and credibility of the parties.'" Sea Hope Navigation Inc., 978 F. Supp. 2d at 337 (alteration in original) (quoting Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 507 (2d Cir. 1991))

III. DISCUSSION

The Moving Defendants argue that the Clerk entered the defaults in error because the Standing Order governs the time that the Moving Defendants had to respond. They argue in the alternative that even if the defaults were properly entered, the Moving Defendants have shown good cause to vacate the entries of default. Because the Moving Defendants have plainly shown good cause to vacate the entries of default for the reasons set forth below, we do not reach the issue of whether the Clerk erroneously entered the defaults in the first instance.

A. Willfulness

In the context of a default, the Second Circuit has interpreted "willfulness" to mean "more than merely negligent or careless." S.E.C. v. McNulty, 137 F.3d 732, 738 (2d Cir. 1998); accord Green, 420 F.3d at 108. However, "the court may find a default to have been willful where the conduct of counsel or the litigant was egregious and was not satisfactorily explained," such as when defendants "failed, for untenable reasons, after defendants had 'purposely evaded service for months,' to answer the complaint." McNulty, 137 F.3d at 739 (quoting Commercial Bank of Kuwait v. Rafidain Bank, 15 F.3d 238, 243-44 (2d Cir. 1994)). "In contrast to situations in which 'the conduct of counsel or the litigant was egregious and was not satisfactorily explained,' a defendant's inadvertent mistake may be excusable." Vedder Price P.C. v. US Capital Partners, LLC, 2017 WL 4180021, at *3 (S.D.N.Y. Sept. 20, 2017) (quoting McNulty, 137 F.3d at 738)). Here, the Moving Defendants' defaults plainly were not willful.

First, the Moving Defendants have provided a satisfactory explanation for their failure to timely answer the complaint. Based on the Standing Order, the information contained in the Acknowledgment Forms, and the information provided by the U.S. Marshal to Chaudhary, the Moving Defendants reasonably believed they could waive service by completing and returning the Acknowledgment Forms, even after being personally served. See Defs. Mem. at 8-9; Chaudhary Aff. ¶¶ 5-8. Had the Acknowledgment Forms been deemed effective waivers of service in this case, the Moving Defendants would not have been required to respond to the complaint until at least 60 days after the first of those forms was mailed to the U.S. Marshals Service on December 20, 2017. See Chaudhary Aff. ¶ 8. By that calculation, the Moving Defendants were not in default on January 25, 2018, the date on which the entries of default were made. We do not reach the question of whether the defendants were correct or incorrect in their belief. But even if they were incorrect, an error of this kind is at most an inadvertent

9

mistake and is thus excusable. See Vedder Price P.C., 2017 WL 4180021, at *3.

Moreover, the Second Circuit has found that a defendant's prompt application for a motion to set aside an entry of default suggests that the default was not willful. See Enron Oil Corp., 10 F.3d at 98. Here, a mere two business days after the Clerk entered the defaults, the Moving Defendants sought to vacate them. See Miller Letter at 2. This prompt response and attempt to remedy the defaults reflects that had the Moving Defendants been aware of their obligation to respond by January 9, 2018, then they would have filed timely answers, and thus did not act willfully in failing to do so. See Enron Oil Corp., 10 F.3d at 98.

Johnson argues, see Pl. Mem. at 6-7, that the Moving Defendants' conduct in this case resembles the defendants' conduct in Green, 420 F.3d 99, where the Court found the defendants' default was willful. In Green, however, the defendant moved to vacate the default judgment "nearly a _full_ _year_" after the default judgment was entered. See 420 F.3d at 103 (emphasis added). Here, the Moving Defendants sought vacatur after two business days. Moreover, in Green, "[d]efendants offered no explanation for their counsel's failure to appear or seek any extension of time to respond to the complaint. Nor did they provide any justification for their own failure to take action after receiving notice that the clerk had entered a default against them." Id. at 109 (citation omitted). Here, the Moving Defendants provided a reasonable explanation for their conduct.

Johnson's other arguments regarding willfulness are similarly unpersuasive. Johnson speculates that "Mr. Miller made a calculated decision to default by not answering the complaint . . . to not communicate with Plaintiff or the Court . . . [and] to put in a Notice of Appearance." Pl. Mem. at 7. However, Johnson fails to provide any support for this conclusory allegation. Indeed, given Miller's prompt appearance once a certificate of default was entered, the record

suggests the opposite. Johnson finds it significant that Miller "decided to communicate with the Court and Plaintiff <u>AFTER</u> the Entry of Default." Pl. Mem. at 7-8 (emphasis in original). But the fact that Miller failed to make an appearance or otherwise communicate with Johnson and the Court prior to defaulting is consistent with the Moving Defendants' belief that they thought their deadline to answer the complaint was some time in the future.

Finally, Johnson implies that the Moving Defendants are lying about receiving the Acknowledgment Forms on December 5, 2017, because those forms are dated November 7, 2017, thereby suggesting that they must have been mailed on that date. <u>See</u> Pl. Mem. at 4. Johnson argues that the Moving Defendants must have received the Acknowledgment Forms earlier than December 5, 2017, because it is implausible that these forms would take nearly a month to arrive by mail at the Moving Defendants' addresses. <u>See id.</u> However, there is no evidence that these forms were in fact mailed on November 7, 2017. Indeed, Chaudhary's affidavit states that the U.S. Marshal with whom she spoke informed her that the U.S. Marshals Service kept no record of when these forms were mailed, making that date impossible to determine. <u>See</u> Chaudhary Aff. ¶ 5. One of these forms was stamped received on December 5, 2017. <u>See</u> Acknowledgment Forms. Also, a sworn declaration by Chaudhary confirms receipt of these forms on December 5, 2017, as to Hamilton, Perez, and the Trustees. Chaudhary Aff. ¶ 2.

    B. <u>Prejudice</u>

The Second Circuit has established that "delay standing alone does not establish prejudice" sufficient to defeat a motion to vacate a default. <u>Enron Oil Corp.</u>, 10 F.3d at 98. "Rather, it must be shown that delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." <u>Davis v.</u>

Musler, 713 F.2d 907, 916 (2d Cir. 1983) (internal quotation marks and citation omitted). In Sea Hope Navigation Inc., this Court noted that "it would be almost impossible to establish [] prejudice" where the defaulting party "filed an appearance with the Court less than one month after [the non-defaulting party] filed its motion for a default judgment." 978 F. Supp. 2d at 339.

Johnson has shown no prejudice. Instead, he argues that "[t]he Plaintiff would be prejudiced by the ruling if the Motion is granted because of the Defendants['] history to withhold documents and intimidate witnesses." Pl. Mem. at 10. Putting aside the lack of record support for this assertion, plaintiff's argument does not address the question of how the delay occasioned by the Moving Defendants' motion has caused prejudice. Therefore, it is rejected.

C. Meritorious Defenses

On the question of meritorious defense, "[t]he test of such a defense is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense." Enron Oil Corp., 10 F.3d at 98. "The defaulting defendant 'need only meet a low threshold to satisfy this factor.'" Gench v. HostGator.com LLC, 2015 WL 3757120, at *5 (S.D.N.Y. June 17, 2015) (quoting MD Produce Corp. v. 231 Food Corp., 304 F.R.D. 107, 110 (E.D.N.Y. 2014)); see also Am. Alliance Ins. Co., Ltd. v. Eagle Ins. Co., 92 F.3d 57, 61 (2d Cir. 1996) (defense "need not be ultimately persuasive at this stage" to satisfy this factor). Nonetheless, a defendant must still "articulate a defense with a degree of specificity which directly relates that defense to the allegations set forth in the plaintiff's pleadings and raises a 'serious question' as to the validity of those allegations.'" FedEx TechConnect, Inc. v. OTI, Inc., 2013 WL 5405699, at *8 (S.D.N.Y. Sept. 23, 2013) (quoting Salomon v. 1498 Third Realty Corp.,148 F.R.D. 127, 130 (S.D.N.Y. 1993)). Here, the Moving Defendants have easily met the burden of showing meritorious defenses in this case.

First, the applicable statutes of limitations preclude any claims arising from the accusations and disciplinary actions taken against Johnson in 2006 and 2007, as none of them stretch back as far as the ten years required to permit him to bring causes of action arising from events occurring in 2007. Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 383 (2004) (up to a four year statute of limitations for claims under 42 U.S.C. § 1981); Durham v. SUNY Rockland Cmty. Coll., 2016 WL 128214, at *6 (S.D.N.Y. Jan. 12, 2016) (three years for NYCRL); Edwards v. Jericho Union Free Sch. Dist., 904 F. Supp. 2d 294, 303 (E.D.N.Y. 2012) (three years for NYHRL); Al-Haideri v. Trs. of Columbia Univ., 2007 WL 2187102, at *2 (S.D.N.Y. July 26, 2007) (three years for 42 U.S.C. § 2000d et seq.); Cabrera v. Quik Park Columbia Garage Corp., 2000 WL 1897348, at *1 (E.D.N.Y. Dec. 18, 2000) (one year for claim of intentional infliction of emotional distress); Gaidon v. Guardian Life Ins. Co. of Am., 96 N.Y.2d 201, 210 (2001) (three years for claims under N.Y. Gen. Bus. L. § 396); Novita LLC v. 307 W. Rest. Corp., 35 A.D.3d 234, 234 (1st Dep't 2006) (six years for breach of contract claims).

As for the other claims, it is enough to note that the Moving Defendants have alleged a legitimate non-discriminatory reason for denying admission to plaintiff — namely, that "the SPS Dean determined that his application materials and disciplinary history did not merit re-admitting him to NYU." Defs. Reply at 10. In support of this argument, the Moving Defendants have offered the affidavit of Dennis Di Lorenzo, the Dean of NYU SPS, who stated that he "reviewed and considered" Johnson's application, and determined that Johnson should not be offered admission "[b]ased on [Di Lorenzo's] assessment of Mr. Johnson's qualifications considering the totality of his application, including his disciplinary history" at NYU. See Di Lorenzo Aff. ¶¶ 1-3. This testimony, if offered and proven at trial, would constitute a complete

13

defense because all of Johnson's claims not barred by the applicable statutes of limitations arise from his claim that NYU did not have a legitimate basis for denying his application for re-admission in 2017.

\* \* \*

In sum, all three factors weigh in favor of vacating the entries of default. Accordingly, the defaults must be vacated pursuant to Federal Rule of Civil Procedure 55(c).

IV. CONCLUSION

For the reasons set forth above, the defaults entered by the Clerk (Docket ## 14-17) are vacated. The defendants shall respond to the complaint within 21 days.

Dated: April 3, 2018
New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

Copy mailed to:

Vandyke Johnson
619 West 143rd Street
Apt. 54
New York, NY 10031

14